■ MILTON BERLIN, Respondent, v JOSEPH L. DASSEL et al., Appellants, et al., Defendants, and JAY KAPIN et al., Respondents.—In an action to foreclose a second mortgage, wherein appellants counterclaimed, *inter alia,* for damages and to compel plaintiff Berlin to satisfy the said mortgage on the ground that they had been fraudulently induced to execute the same, the appeal is from a judgment of the Supreme Court, Nassau County, entered December 4, 1975, which, after a nonjury trial, *inter alia,* granted the relief demanded in the complaint and dismissed the counterclaim. Judgment reversed, on the law and the facts, with costs, and complaint dismissed; the second mortgage is declared to be null and void; appellants are awarded judgment on their counterclaim to the extent that they are entitled to recover compensatory damages; and action remitted to Special Term for a hearing to determine the amount of said damages in accordance herewith. In 1967 the Dassels, owners of premises known as 79 Emily Avenue, Elmont, were three months in arrears (at $105 a month) on a mortgage held by Dime Savings Bank of Brooklyn. The outstanding principal on the mortgage was less than $4,000. When the bank started foreclosure proceedings, the Dassels responded to certain literature advertising financial assistance. Jay Kapin appeared at their home. Mr. Kapin's pretrial deposition was read into evidence. He therein stated that he had told the Dassels that he would buy their house, lease it to them and, when the Dassels were ready, he would sell it back at a profit of $1,500 to $2,000, plus expenses. He also deposed that he asked whether Mr. Dassel needed additional money, and that Mr. Dassel replied that he could use $2,000 for his daughter's wedding. We credit that testimony. About a week later, according to the testimony of Mr. Dassel, Milton Berlin appeared at the Dassel home, accompanied by a woman. The Dassels were given papers to sign which, Mr. Dassel testified, they signed then and there without reading them. (The papers were a deed and a lease wherein the Dassels were named as tenants and the amount of the rental was the same as the mortgage payments, $105 a month.) Mr. Dassel was also given a check for $2,000. The other woman was Mr. Berlin's secretary and was also a notary public. Mr. Berlin denied that he was present then and denied any involvement with the property until two years later. We credit Mr. Dassel's testimony. Armed with title (in the names of various corporate and individual nominees), Mr. Berlin applied for a mortgage from the Whitestone Savings and Loan Association. A mortgage was given to John Wilkes, Mr. Berlin's nominee, in the amount of $17,300. From that sum Mr. Berlin repaid his corporation $4,000 for its purchase of the Dime Savings Bank mortgage and deposited the net balance of $11,953.89 to the account of a corporation controlled by Mr. Kapin. The latter funds were eventually deposited into an account of Mr. Berlin's own corporation. Mr. Dassel testified that he objected to making monthly payments to a corporation rather than a bank. Mr. Berlin granted his wish in September, 1969 by having his nominee, Mr. Wilkes, transfer title to the Dassels and *take back a $12,000 mortgage,* subordinate to the Whitestone mortgage, then in an amount in excess of $16,000. Thus, the Dassels once again had title, but with a mortgage indebtedness of more than $28,000. No payments were made on the second mortgage, which Mr. Berlin seeks to foreclose. Mr. Berlin claims that his only involvement with the second mortgage transaction was that he bought the $12,000 mortgage

from Mr. Wilkes for $10,000. (John Wilkes did not testify, but the evidence clearly shows he was Mr. Berlin's nominee.) The documentary evidence, showing that the proceeds of the $10,000 check in alleged payment for the second mortgage found their way back to Mr. Berlin's corporation, belies Mr. Berlin's claim. There was a colossal fraud perpetrated herein based either upon an original intention not to carry out the agreed promise, or upon a failure of consideration (in that there was a change of mind after the original transfer). There is also a most serious question of usury. In any event, under the monstrous circumstances herein, the second mortgage is to be deemed null and void, and the Dassels are entitled to recover compensatory damages, which shall be determined after a trial at Special Term, based upon the theory that the advances made by Mr. Berlin and his nominees were in connection with a mortgage loan and not a conveyance. Respondents shall be credited with the $2,000 advanced to the Dassels, the amounts paid by Mr. Berlin in connection with the assignment and satisfaction of the Dime Savings Bank mortgage, real estate taxes, water and sewer charges, insurance, maintenance charges paid by Mr. Berlin, or his nominees, and the maximum legal interest on all of the said sums. The Dassels shall be credited with all sums paid by them as "rent", or paid or owing as amortization of principal and interest on the mortgage to the Whitestone Savings and Loan Association, as well as with the present balance of said mortgage. The fact that the Dassels did not read the papers presented to them may explain the ease of the fraud (but see *Sowinski v Cortelle Corp.,* 44 AD2d 838; *McKenney v Kapin,* Supreme Ct, Nassau County, Index No. 73-4164, Nov. 19, 1975), but makes it no less a fact—and no less reprehensible. Hopkins, Acting P. J., Damiani, Rabin, Shapiro and Hawkins, JJ., concur.